IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN GANLEY,

    **Plaintiff,**

v.                                                                           No. 1:17-cv-00432 JB-SMV

**ERIC JOJOLA in his
individual capacity, and THE
CITY OF ALBUQUERQUE,**

    **Defendants.**

## FIRST AMENDED COMPLAINT FOR DAMAGES
## FOR VIOLATION OF CIVIL RIGHTS AND TORT CLAIMS

    Plaintiff John Ganley, by and through counsel, Nicole W. Moss and Marshall J. Ray, brings this First Amended Complaint under 42 U.S.C. §1983 and under the New Mexico Tort Claims Act for damages resulting from the actions and injuries inflicted upon him by Defendants Eric Jojola and the City of Albuquerque.  The original Complaint was filed in the Second Judicial District Court for the State of New Mexico on March 6, 2017. Defendant City of Albuquerque was served with the original Complaint on March 10, 2017, and Defendant Eric Jojola was served on March 15, 2017. Defendants filed a Notice of Removal (Doc. 1) and Answer (Doc. 7) on April 10, 2017. Counsel for Defendants have been consulted regarding this amendment and do not oppose its filing.  Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1.    Jurisdiction and Venue are proper in the United States District Court for the District of New Mexico pursuant to 42 U.S.C. §§ 1983 & 1988, and 28 U.S.C. §1343.

Plaintiff is a resident of Bernalillo County, New Mexico and the acts complained of occurred exclusively within Bernalillo County, New Mexico.

## PARTIES

2. Plaintiff John Ganley, a New Mexico citizen, currently resides in the County of Bernalillo, New Mexico.

3. Defendant Eric Jojola was at all times material to this Complaint employed by the City of Albuquerque as a police officer. At all times material to this Complaint, Defendant Jojola was acting within the course and scope of his employment and under color of state law.

4. Defendant the City of Albuquerque is a political sub-division of the State of New Mexico, is a person subject to suit under 42 U.S.C. § 1983, and is a governmental entity subject to suit under the New Mexico Tort Claims Act. Defendant the City of Albuquerque has the authority to own, maintain and manage the Albuquerque Police Department and possesses final policy and decision-making authority over it. Under the New Mexico Tort Claims Act, Defendant the City of Albuquerque is vicariously liable for the acts and omissions of its employees and agents. At all times relevant to this Complaint, Defendant the City of Albuquerque was responsible for adopting and implementing the policies, customs and practices of its Police Department, including its employees and agents. At all times material to this Complaint, the City of Albuquerque was the employer of Defendant Jojola.

5. Defendant Jojola is sued in his individual capacity.

## **GENERAL ALLEGATIONS**

6. Plaintiff is a veteran who served honorably in the Air Force, and who suffers from Post-Traumatic Stress Disorder ("PTSD"), Crohn's disease, depression, and a seizure disorder. Plaintiff also has latent injuries to his spinal cord.

7. Plaintiff is 40 years old and works as a dispatcher for the Kirtland Airforce Base Fire Department. Plaintiff's employment on Kirtland Airforce Base requires him to maintain a security clearance.

8. Plaintiff is a law-abiding individual, and before his encounter with the Defendants that is the subject of this Complaint, Plaintiff had a clean record which permitted him to obtain security clearance to work on the military base.

9. Sometime in the Fall of 2015, Plaintiff became the victim of identity theft, and, on or around September 4, 2015, an individual who is much younger and bears no resemblance to Plaintiff used Plaintiff's identity to cash a stolen check which had been altered to reflect "John Ganley" as the payee.

10. When this individual cashed the altered check on September 4, 2015, a surveillance camera captured the transaction. The resultant footage contains clear views of the suspect.

11. On September 21, 2015, Albuquerque Police Department Officer Kelly Burt conducted an initial investigation into a report regarding stolen checks, including the check cashed by the individual falsely purporting to be John Ganley. Discussing the multiple names of payees on the reported altered checks, Officer Kelly noted: "It is unknown if they are offenders or victim [sic] of identity theft."

12. On October 26, 2015, Defendant Jojola became involved in the investigation regarding the stolen check and confirmed that suspects were stealing checks from particular cluster mailboxes, altering the payee information, and cashing the checks.

13. On March 3, 2016, Defendant Jojola continued his investigation into the stolen check that is the subject of this case. Defendant Jojola obtained the forged check and still photographs of the transaction.

14. Defendant Jojola also learned during his March 3, 2016 investigation that the teller who cashed the check had taken the driver's license number of the purported payee. The Driver's License number belonged to Plaintiff.

15. Defendant Jojola used the driver's license number to obtain a photograph of Plaintiff from Motor Vehicle Division records.

16. With multiple photographs of the transaction in hand, and a photograph of Plaintiff to compare, Defendant stated the following in his investigative report: "I was able to obtain a picture of the male identified as John Ganley, and it is verified that John Ganley cashed the check on September 04, in the business name of Viking Inc. II."

17. The photographs Defendant Jojola possessed showed clearly that Plaintiff was not the individual cashing the check. The suspect cashing the check was younger, had very different facial features, and was of smaller build than Plaintiff. Besides providing a close-up photograph of Plaintiff's face, the report Defendant Jojola received from MVD listed Plaintiff's height and weight as 6' 2'' and 212 pounds.

18. The suspect cashing the stolen check also has prominent and distinctive tattoos on his arms, including an easily recognizable star pattern on the right arm. Plaintiff has no tattoos.

19. After cursorily glancing at the photographs in his possession, Defendant Jojola conducted no further investigation into the identity of the individual who cashed the check on September 4, 2015, and did not attempt to contact Plaintiff to question him about the incident. Defendant's stated reason for failing to conduct any further investigation or to contact Plaintiff is that he was too busy.

20. On March 14, 2016, Defendant Jojola swore out an Arrest Warrant Affidavit and Criminal Complaint targeting Plaintiff. The Complaint charged Plaintiff with Forgery and Fraud in violation of the Remote Financial Services Act – both felonies.

21. The felony warrant for Plaintiff's arrest was based on Defendant Jojola's affidavit issued on March 14, 2016. The warrant set forth a $5,000 cash or surety bond.

22. The warrant remained pending, unbeknownst to Plaintiff, until late May 2016.

23. On or around May 20, 2016, Plaintiff and his wife were travelling together near Las Vegas, NM when they were pulled over for a traffic stop.

24. During the traffic stop in Las Vegas, the officer was notified of the warrant for Plaintiff's arrest. The officer accordingly arrested Plaintiff on the side of the road, handcuffed him, and took him to San Miguel County Detention Center. Plaintiff's wife posted a bond for Plaintiff to be released. While Plaintiff was in San Miguel County, he was subject to a strip search, among other things. He was released on bond after spending approximately 3 hours at the jail. Nevertheless, Plaintiff was advised that the warrant remained active and that he would need to turn himself in when he returned to Bernalillo County. Plaintiff left San Miguel County humiliated and in tears.

25. Knowing that his warrant was active, on or about May 25, 2016 Plaintiff went to a bail bond company in Albuquerque, NM and then contacted law enforcement to turn himself in.

26. On May 25, 2016, pursuant to his call to law enforcement, Plaintiff was arrested, handcuffed, transported, and booked into the Metropolitan Detention Center ("MDC") on the pending warrant.

27. As part of the intake process at MDC, Plaintiff was again strip searched, moved into a pod, issued bedding, and changed into an orange jump suit.

28. As stated above, Plaintiff suffers from Crohn's disease, a seizure disorder, depression, and PTSD. Stress aggravates these conditions. When Plaintiff learned of the pending charges, and upon being arrested, and then booked into MDC, Plaintiff experienced a sharp increase in the symptoms of Crohn's disease and PTSD. These increased symptoms persisted for several months. He has also experienced depression resulting from these events.

29. The process for Plaintiff to bond out of MDC took between six and eight hours after initial booking.

30. The day after he was released from MDC, Plaintiff met with a psychiatrist, and subsequently began receiving more frequent counseling, including counseling for trauma. Plaintiff also sought spiritual counseling at the Albuquerque Center for Spiritual Living. Furthermore, Plaintiff was prescribed medication for the anxiety he experienced because of his criminal charges and arrest.

31. After bonding out, Plaintiff's criminal case remained pending until October 20, 2016. During the pendency of his criminal case, Plaintiff suffered emotional distress,

depression, and anxiety, and experienced increased symptoms of Crohn's disease and PTSD.

32. To defend against the pending felony charges, Plaintiff sought the services of an attorney, incurring attorney's fees and expenses.

33. On October 19, 2016, Plaintiff appeared at the Albuquerque Police Department's evidence laboratory in Albuquerque for fingerprinting. Upon completing this process, he had an emotional breakdown and left shaking and in tears.

34. Eventually, on October 20, 2016, the Second Judicial District Attorney's Office recognized that Plaintiff had not engaged in any wrongdoing and issued a Nolle Prosequi stating: "After further investigation by the detective in this matter it has been determined that John Ulrick Ganley was a victim of identity theft and was not the perpetrator of the any [sic] of the crimes charged in the criminal complaint."

35. Although his case was dismissed, Plaintiff continues to suffer from emotional distress, depression, and anxiety because of the actions of Defendants. Plaintiff continued to experience increased symptoms of Crohn's disease and PTSD. Moreover, Plaintiff faces the risk that his security clearance, upon which he depends for his livelihood, will be jeopardized because he had a felony fraud and forgery case which is searchable through public databases and basic internet queries. Plaintiff will also face substantial costs and fees associated with expunging his record. Finally, the emotional and physical suffering that Plaintiff experienced as a result of Defendants' actions led to strained relationships for him at work, including with his supervisor.

**COUNT I.  42 U.S.C. § 1983 CONSTITUTIONAL DEPRIVATIONS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AGAINST DEFENDANT JOJOLA FOR WRONGFUL ARREST AND VIOLATIONS OF DUE PROCESS**

36. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

37. Defendant Jojola conducted an investigation that was objectively unreasonable when he ignored obvious evidence that Plaintiff was not the suspect, including photographs of the suspect and of Plaintiff, and MVD records describing Plaintiff in a way that contradicts the photographic evidence of the check forgery suspect.

38. Defendant Jojola executed an affidavit supporting an arrest warrant and opening a criminal complaint against Plaintiff even though all of the information he had before him showed that Plaintiff was not the suspect and that Plaintiff was the victim of identity theft and that no probable cause existed to arrest or otherwise initiate criminal proceedings against Plaintiff.

39. Defendant Jojola violated clearly established law when he ignored obvious exculpatory information to swear out the affidavit supporting the warrant and criminal complaint.

40. Defendant Jojola also acted in a manner that was objectively unreasonable and in violation of clearly established law when he chose not to complete his investigation on the grounds that he did not have time.

41. Defendant Jojola's unlawful acts and violation of Plaintiff's Fourth and Fourteenth Amendment rights proximately caused Plaintiff's damages and injuries, including but not limited to physical and emotional suffering, attorney fees, costs of record expungement, reputation damage, damage to personal relationships, lost time and productivity, and continuing medical expenses and expenses associated with counseling.

42. All of the above-described acts and omissions of Defendant Jojola were done in a manner that was reckless, deliberately indifferent to, and/or intentionally violated the Plaintiff's Fourth Amendment and Fourteenth Amendment rights.

43. Defendant Jojola's actions shock the conscience and constitute violations of Plaintiffs right to due process.

44. Punitive damages are appropriate to punish and deter Defendant Jojola and others in the Albuquerque Police Department from future similar conduct of deliberately violating the Fourth and Fourteenth Amendment rights of citizens.

**WHEREFORE**, Plaintiff seeks judgment against Defendant Jojola for compensatory and punitive damages and an award of attorney's fees and costs.

### COUNT II.  TORT CLAIMS AGAINST DEFENDANT JOJOLA AND THE CITY OF ALBUQUERQUE

45. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

46. Defendant Jojola failed to investigate obvious exculpatory information before swearing out an affidavit to support a warrant and criminal complaint against Plaintiff. By his actions, Plaintiff caused a criminal case to be opened and an arrest warrant to be issued without probable cause.  Furthermore, Plaintiff was subjected to a false arrest despite the overwhelming evidence that he was the victim of identity theft and was not the proper suspect.  Furthermore, Defendant Jojola, in the course and scope of his employment as a law enforcement officer, violated Plaintiff's rights under the United States Constitution.

47. Defendant's tortious conduct proximately caused Plaintiff's damages and injuries, including physical and emotional suffering, attorney fees, costs of record expungement,

reputation damage, damage to personal relationships, lost time and productivity, and continuing medical expenses and expenses associated with counseling.

48. Defendant the City of Albuquerque is liable for the acts and omissions of its employees, agents and contractors, including Defendant Jojola under *respondeat superior*.

49. Defendant the City of Albuquerque had a duty to act reasonably in order to avoid injuries and deprivations of rights resulting from failures properly to investigate before opening criminal cases against individuals who are obviously not proper suspects.

50. Defendant City of Albuquerque breached that duty to Plaintiff and committed the torts of negligent hiring, supervision, training, discipline and retention of Defendant Jojola.

51. Defendant City of Albuquerque had a duty to supervise its employees, contractors and agents in order to ensure that they did not act negligently, grossly negligently, or recklessly operate or maintain its Police Department.

52. All Defendants knew, or should have known, that their acts or omissions would result in injuries, damages, and harm to Plaintiff, yet Defendants possessed disregard for the consequences of their actions.

53. The conduct of all Defendants, as described above, was the direct and proximate cause of the injuries and damages suffered by Plaintiff.

54. Defendants were on actual notice that they had committed torts and that they faced litigation for their tortious conduct.

**WHEREFORE**, Plaintiff requests compensatory damages and an award of attorney's fees and costs.

**COUNT III. SUPERVISORY AND MUNICIPAL LIABILITY CLAIMS UNDER 42 U.S.C. § 1983 FOR CONSTITUTIONAL DEPRIVATIONS OF PLAINTIFF'S FOURTH, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS AGAINST DEFENDANT**

55. Plaintiff incorporates the preceding paragraphs as though set forth fully herein.

56. The individual Defendant's actions constituted a custom, practice, and policy of deliberate indifference to the rights of Plaintiff and other citizens which affirmatively and proximately caused Plaintiff's injuries.

57. Defendant the City of Albuquerque is liable under 42 U.S.C. § 1983 for the custom, practice, and policy described above.

WHEREFORE, Plaintiff requests compensatory and punitive damages against Defendant the City of Albuquerque, together with attorney's fees and costs.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all counts.

Respectfully Submitted,

LAW OFFICE OF NICOLE W. MOSS, L.L.C.

/s/ *Nicole W. Moss*
Nicole W. Moss
201 12th St. NW
Albuquerque, NM 87102
(505) 244-0950

LAW OFFICES OF MARSHALL J. RAY, LLC

/s/ *Marshall J. Ray*
Marshall J. Ray
201 12th St. NW
Albuquerque, NM 87102
(505) 312-7598
(505) 214-5977 (f)