## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**JOHN GANLEY,**

   **Plaintiff,**

**v.**                                        **No. 1:17-cv-00432 JB-SMV**

**ERIC JOJOLA in his**
**individual capacity, and THE**
**CITY OF ALBUQUERQUE,**

   **Defendants.**

## DEFENDANTS ERIC JOJOLA AND CITY OF ALBUQUERQUE'S MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY AND OTHER GROUNDS

**COME NOW,** Defendants Eric Jojola and City of Albuquerque (hereinafter "Defendants") by and through their counsel of record, Assistant City Attorney Jessica L. Nixon, and pursuant to FED. R. CIV. P. Rule 56, hereby present their Motion for Summary Judgment on Qualified Immunity and Other Grounds. Pursuant to LR-CV 7.1(a), Plaintiff opposes this Motion.

### I.    INTRODUCTION

This matter arises from Detective Eric Jojola's investigation of a stolen check which had been altered to reflect the payee as John Ganley and was cashed by an individual purporting to be John Ganley which led to the issuance of an arrest warrant for, and subsequent arrest of, the individual later identified as Plaintiff John Ganley. In this matter, Plaintiff alleges that Detective Jojola's submission of an arrest warrant affidavit caused Plaintiff to be deprived of his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution. Plaintiff also alleges that Detective Jojola is liable for unlawful arrest, constitutional violations, and failure to investigate under the New Mexico Tort Claims Act. Summary judgment is the proper disposition of Plaintiff's claims because Detective Jojola is entitled to qualified

1

immunity. As will be illustrated herein, based on the totality of the circumstances, Detective Jojola had probable cause to submit the arrest warrant affidavit on March 14, 2016 and Detective Jojola did not commit a violation of Plaintiff's clearly established constitutional rights. Accordingly, Defendants respectfully request that Counts I and II of Plaintiff's First Amended Complaint.

## II.     UNDISPUTED MATERIAL FACTS

For purposes of this Motion only, the following facts are undisputed:

1. Plaintiff's First Amended Complaint for Damages for Violation of Civil Rights and Tort Claims (hereinafter "Amended Complaint") asserts claims against Detective Jojola pursuant to 42 U.S.C. § 1983 based upon a Criminal Complaint-Arrest Warrant Affidavit (hereinafter "Affidavit") authored by Detective Jojola. *See* Doc. 22 at Count I.

2. Plaintiff's Amended Complaint also asserts claims against the City of Albuquerque and Detective Jojola pursuant to the New Mexico Tort Claims Act, NMSA 1978 § 41-4-1 *et seq*. based upon the Affidavit authored by Detective Jojola. *See* Doc. 22 at Count II.

3. On October 26, 2015, Detective Jojola began an investigation regarding a large amount of stolen mail. *See* Criminal Complaint-Arrest Warrant Affidavit, attached hereto as Exhibit A; *see also* Affidavit of Detective Eric Jojola, attached hereto as Exhibit B at ¶ 2.

4. During the course of his investigation, Detective Jojola spoke with postal inspector Brad Specht, who informed Detective Jojola that he had information that a forged check was cashed by a man named John Ganley on September 4, 2015. *See* Exhibit A; *see also* Exhibit B at ¶ 3.

5. Postal inspector Specht also explained to Detective Jojola that the check cashed by John Ganley was stolen between July 2015 and September 2015 from the mail. *See* Exhibit A.

6. On March 3, 2016, Detective Jojola contacted investigator Steve Torbett in regard to the stolen and forged check, who provided Detective Jojola with a copy of the forged check cashed by

John Ganley. *See* Exhibit A; *see also* Exhibit B at ¶¶ 5-6; *see also* Copy of Check, attached hereto as <u>Exhibit C</u>.

7.  Mr. Torbett also provided Detective Jojola with still photographs from surveillance video of the transaction at issue. The still photographs showed a white male with short brown hair cashing the check. *See* Exhibit A; *see also* Exhibit B at ¶ 7; *see also* Surveillance Video Still Photographs, attached hereto as <u>Exhibit D</u>.

8.  Detective Jojola learned that during the transaction at issue, the bank teller wrote down the New Mexico driver's license number of the individual cashing the check. *See* Exhibit A; *see also* Exhibit B at ¶ 8.

9.  After meeting with Mr. Torbett, Detective Jojola returned to his office and ran an inquiry of the driver's license number written down by the bank teller through New Mexico MVD records. *Id.* at ¶ 9.

10. The inquiry verified that the driver's license number written down by the bank teller belonged to John Ganley. *See Id.* at ¶ 10.

11. Detective Jojola also obtained a MVD photograph of John Ganley from his inquiry. *See* Exhibit A; *see also* Exhibit B at ¶ 11; *see also* MVD Record Photograph, attached hereto as <u>Exhibit E</u>.

12. Detective Jojola compared the surveillance video photographs to the MVD photograph, observing that the MVD photograph was a close-up image of the face of a white male with short brown hair, similar to the individual pictured in the surveillance video photographs. *See* Exhibit B at ¶ 12.

13. Comparing the photographs, Detective Jojola also observed that the person pictured in the surveillance video photographs appeared to be of a similar age to the individual pictured in the MVD photograph. *Id.* at ¶ 13.

14. Detective Jojola observed that the individual pictured in the surveillance video photographs had tattoos on his arms, however, the MVD photograph only showed a close-up image of the face of John Ganley. *Id.* at ¶ 14.

15. Based on the identity of the name with the driver's license number and the similarities Detective Jojola observed between the two sets of photographs, Detective Jojola verified that John Ganley cashed the check on September 4, 2015 in the business name of Viking Inc. II. *See* Exhibit B at ¶ 15; *see also* Exhibit A.

16. On March 7, 2016, Detective Jojola spoke with the victim of the forged check cashed by John Ganley who informed him that John Ganley did not have permission to cash the check and did not have an affiliation with the business. *See* Exhibit A; *see also* Exhibit B at ¶ 16.

17. Detective Jojola attempted to contact the individual later identified as Plaintiff John Ganley regarding the check cashed on September 4, 2015 but was unable to reach him by telephone. *See* Exhibit B at ¶ 17.

18. Detective Jojola also observed that John Ganley appeared to have signed the back of the check. *See* Exhibit A; *see also* Exhibit B at ¶ 18.

19. On March 14, 2016, Detective Jojola submitted the Affidavit, charging John Ganley with Forgery and violation of the Remote Financial Service Units Act. *See* Exhibit A; *see also* Exhibit B at ¶ 19.

20. The Affidavit was signed by a judge and assistant district attorney on the same date. *Id.*

21. On the same date, a judge in the Metropolitan Court for the State of New Mexico, County of Bernalillo issued a Warrant for Arrest of John Ganley for forgery and violation of the Remote Financial Service Units Act contrary to Sections 30-16-10, 58-16-16. *See* Warrant for Arrest, attached hereto as Exhibit F; *see also* Exhibit B at ¶ 20.

22. Prior to Detective Jojola's investigation, on September 21, 2015, Officer Kelly Burt was dispatched to conduct a preliminary investigation regarding altered checks stolen from the mail. In his report, Officer Burt wrote that "[i]t is unknown if they are offenders or victim [sic] of identity theft." Detective Jojola reviewed Officer Burt's report during his investigation after speaking with postal inspector Brad Spect and investigator Steve Torbett. Using the name John Ganley and listed date of birth, Detective Jojola utilized the department's Automated Reporting System ("ARS") to inquire whether there were any incidents of past fraud or burglary which would have indicated possible identity theft. Detective Jojola did not have any indication or other evidence that identity theft had occurred. *See* Exhibit B at ¶¶ 21-23.

23. On October 19, 2016, after Plaintiff John Ganley had been arrested, it was learned that Plaintiff John Ganley had likely been the victim of identity theft and was not a suspect involving the forged check cashed on September 4, 2015. *See* Exhibit B at ¶ 24.

## III.   SUMMARY JUDGEMENT STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Bacchus Indus., Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation and citation omitted).  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256-57 (1986).  "An issue is material only when the controversy is over the facts that might affect the outcome of the suit under governing law." *Burgess v. West*, 817 F.Supp. 1520, 1523 (D. Kan. 1993) (internal quotation and citation omitted).

## IV.     QUALIFIED IMMUNITY STANDARD OF REVIEW

Typically, the Rule 56 summary judgment standard requires a court to review the evidence in the light most favorable to the non-moving party. *See Brisbee v. Bey*, 39 F.3d 1096, 1100 (10th Cir. 1994). However, summary judgment premised upon qualified immunity is viewed differently. *Hannula v. City of Lakewood*, 907 F.2d 129, 130 (10th Cir. 1990). When a defendant raises the defense of qualified immunity on a motion for summary judgment, the burden shifts to the plaintiff to rebut the presumption of qualified immunity. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000); *see also Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001). In order to overcome the presumption of qualified immunity, a plaintiff has the heavy burden of showing both that (1) the officer in question violated a constitutional right and (2) the allegedly infringed upon right was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing violated that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (internal quotation and citation omitted). Failure to establish either of the qualified immunity elements is fatal to plaintiff's cause of action. Courts have discretion as to which of the two prongs of the qualified-immunity analysis should be decided first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to the constitutional inquiry, the question is whether the facts alleged, taken in the light most favorable to the non-moving party, show that that the officer's conduct violated a constitutional right. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). "A necessary concomitant to the determination of whether the constitutional right is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). The clearly established inquiry, however, is more specific than whether the officer's conduct

violated a constitutional right: the question is whether it would be clear to a reasonable officer that his or her conduct was unlawful in the circumstances which he or she confronted. *Saucier v. Katz*, 553 U.S. 194, 202 (2001).

"[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 606, 615 (1999) (internal citation omitted). For a right to be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right (*Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) because the salient question is whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional (*Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). In other words, the purpose of the qualified immunity analysis is to ensure government officials have the ability to reasonably anticipate when their conduct may give rise to liability for damages. *See Hope*, 536 U.S. at 741. When conducting the clearly established analysis, it is inappropriate for a court to define a law as being clearly established at a high level of generality. *See Brosseau v. Haugen,* 543 U.S. 194, 198-99 (2004); *Wilson*, 526 U.S. at 615. The Tenth Circuit has determined that "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as plaintiff maintains." *Medina v. City & county of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

## V.   LEGAL ARGUMENT

### A. Plaintiff's Wrongful Arrest and Violation of Due Process Claims Set Forth in Count I are Without Merit as There was Probable Cause to Arrest Plaintiff, Thus Detective Jojola is Entitled to Qualified Immunity.

In Count I of the Amended Complaint, Plaintiff expressly sets forth in the title that he claims his Fourth and Fourteenth Amendment rights were violated. However, Plaintiff's wrongful

7

arrest claim cannot be premised upon the Fourteenth Amendment as the United States Supreme Court has held that the Fourth Amendment governs a claim for unlawful detention. *See Manuel v. City of Joliet, Ill.*, ___ U.S. ___, 137 S.Ct. 911, 919-20 (2017); *see also Albright v. Oliver,* 510 U.S. 266, 273 (1994) (explaining that where a particular amendment "provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such claim." (internal quotation omitted)). Accordingly, it is the Fourth Amendment and not the Fourteenth Amendment which applies to Plaintiff's wrongful arrest claim pled in Count I of the Amended Complaint.

The focal point of Fourth Amendment claims for wrongful arrest, detention, and prosecution under 42 U.S.C. § 1983 is whether there is probable cause supporting the arrest and prosecution. *See Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006). Put differently, the Fourth Amendment requires that "[o]fficers [ ] have probable cause to initiate a search, arrest, and prosecution." *Stonechipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). Probable cause does not require of a finding of guilt beyond a reasonable doubt, nor does it require proof of a prima facie case. *See St. John v. Justman*, 771 F.2d 445, 448 (10th Cir. 1985).

### i.   The Affidavit is Supported by Probable Cause.

"Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996); *see also St. John*, 771 F.2d at 448. The

affidavit authored by an officer in support of an arrest warrant "need[] only to establish something 'more than bare suspicion.'" *Puller v. Baca*, 781 F.3d 1190, 1200 (10th Cir. 2015) (quoting *United States v. Ludwig*, 641 F.3d 1243, 1252 (10th Cir. 2011)). "Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner, or, as we have sometimes put it, in 'objective good-faith.'" *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)); *see also St. John*, 771 F.2d at 445 ("Although the existence of probable cause in any particular case is a question of law, the Magistrate's determination of probable cause to issue an arrest warrant is entitled to substantial deference.").

The existence of probable cause for the crimes charged in the Affidavit[1] is fatal to Plaintiff's claim for wrongful arrest. As described in the Affidavit, Detective Jojola conducted an investigation regarding a large amount of stolen mail. *See* Exhibit A; *see also* Exhibit B at ¶ X. In the course of his investigation, Detective Jojola spoke with a postal inspector, who informed Detective Jojola that he received information that a check was cashed by a man named John Ganley on September 4, 2015. *See* Exhibit A; *see also* Exhibit B at ¶ 3. The postal inspector explained that the check cashed by John Ganley was stolen between July 2015 and September 2015 from the mail. *See* Exhibit A; *see also* Exhibit B at ¶ 4. Detective Jojola then made contact with the

---

[1] In the present case, the Affidavit authored by Detective Jojola charged Plaintiff John Ganley with the crime of forgery over $500/less than $2,500 and violation of the Remote Financial Service [Unit] Act. *See* Affidavit, attached hereto as <u>Exhibit A</u>. In New Mexico, "[f]orgery consists of (1) falsely making or alternating any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud; or (2) knowingly issuing or transferring a forged writing with intent to injure or defraud." NMSA 1978, § 30-16-10(A)." A person who commits forgery when the damage is $2,500 or less is guilty of a fourth degree felony. *See* NMSA 1978, § 30-16-10(B). Under the Remote Financial Service Units Act, "[a]ny person who makes an unauthorized withdrawal from the account of another person with a financial institution. . . is guilty of a fourth degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15 NMSA 1978." NMSA 1978, § 58-16-16(B).

investigator identified by the postal inspector, who provided the altered/forged check, cashed by John Ganley. *See* Exhibit A; *see also* Exhibit B at ¶¶ 5-6; *see also* Exhibit C. The investigator also provided Detective Jojola with still photographs from the transaction at issue, which showed a white male with short brown hair cashing the check. *See* Exhibit A; *see also* Exhibit B at ¶ 7; *see also* Exhibit D. Detective Jojola learned that on the date of the transaction, the teller wrote down the New Mexico driver's license number of the individual cashing the check. *See* Exhibit A; *see also* Exhibit B at ¶ 8.

Detective Jojola ran an inquiry through the New Mexico MVD records and obtained the MVD record, including a photograph. *See* Exhibit A; *see also* Exhibit B at ¶ 9, 11; *see also* Exhibit E. The inquiry verified that the driver's license number written on the check by the bank teller belonged to John Ganley. *See* Exhibit B at ¶ 10.  Detective Jojola compared the surveillance video photographs to the MVD photograph, observing that the MVD photograph was a close-up image of the face of a white male with short brown hair, similar to the individual pictured in the surveillance video photographs. *See* Exhibit B at ¶ 12. Comparing the photographs, Detective Jojola also observed that the person pictured in the surveillance video photographs appeared to be of a similar age to the individual pictured in the MVD photograph. *Id.* at ¶ 13.  Detective Jojola observed that the individual pictured in the surveillance video photographs had tattoos on his arms, however, the MVD photograph only showed a close-up image of the face of John Ganley. *Id.* at ¶ 14. Based on the identity of the name with the driver's license number and the similarities Detective Jojola observed between the two sets of photographs, Detective Jojola verified that John Ganley cashed the check on September 04 in the business name of Viking Inc. II. *Id.* at ¶ 15; *see also* Exhibit A.

Thereafter, Detective Jojola spoke with the victim of the forged check cashed by "John Ganley" who informed him that "John Ganley" did not have permission to cash the check and did not have an affiliation with the business. *See* Exhibit A; *see also* Exhibit B at ¶ 16. Detective Jojola also observed that it appeared that the individual who cashed the check had signed the back of the check with the name John Ganley. *See* Exhibit A; *see also* Exhibit B at ¶ 18. Detective Jojola attempted to contact the individual later identified as Plaintiff John Ganley regarding the check cashed on September 4, 2015 but was unable to reach him by telephone. See Exhibit B at ¶ 17. From these facts, Detective Jojola demonstrated a substantial probability that John Ganley had committed a crime and described these facts in the Affidavit. The Affidavit was signed by an assistant district attorney and a judge. *See* Exhibit A. A judge in the Metropolitan Court for the State of New Mexico, County of Bernalillo issued a Warrant for Arrest. *See* Exhibit F. A judge's determination of probable cause to issue an arrest warrant is given great deference and is clear indication that the officer acted in an objectively reasonable manner. *See St. John*, 771 F.2d at 445; *Messerschmidt*, 132 S.Ct. at 1245.

### ii.   Detective Jojola Did Not Knowingly or with Reckless Disregard for the Truth Include a False Statement in the Affidavit.

Where, as in this case, the arrest warrant affidavit is supported by probable cause, a Section 1983 plaintiff may prevail on his or her wrongful arrest claim when he or she can establish that the affiant knowingly, or with reckless disregard for the truth, included false statements in the affidavit. *Bruner v. Baker*, 506 F.3d 1021, 1026 (10th Cir. 2007) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). "A reckless disregard for the truth exists when the affiant in fact entertained serious doubts as to the truth of his allegations, . . . [and] a factfinder may infer reckless disregard from the circumstances evincing obvious reasons to doubt the veracity of the allegations." *DeLoach v. Bevers*, 922 F.2d 618, 622 (10th Cir. 1990) (internal quotation and

citations omitted) (alteration in original). As the Tenth Circuit explained in *Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011): "Where false statements are alleged to have been *included* in an arrest warrant affidavit. . . 'probable cause is determined by setting aside the false information and reviewing the remaining' truthful facts." (quoting *Wolford*, 78 F.3d at 489).

In this case, Plaintiff contends that Detective Jojola's statement that he "was able to obtain a picture of the male identified as John Ganley, and it is verified John Ganley cashed the check on September 4, 2015 in the business name of Viking, Inc. II" was inaccurate. *See* Amended Complaint, Doc. 22 at ¶ 6. Specifically, Plaintiff alleges that the photographs in the possession of Detective Jojola showed that Plaintiff was not the individual cashing the check because the individual cashing the check was younger, had different facial features, was of a smaller build than Plaintiff, and had tattoos on his arms. *See Id.* at ¶¶ 16-17. However, Plaintiff's conclusion that Detective Jojola's verification that John Ganley cashed the forged check was inaccurate is premised upon 20/20 hindsight and not based upon the totality of the circumstances that Detective Jojola confronted at the time the Affidavit was submitted. Detective Jojola determined that there was probable cause that the person later identified as Plaintiff John Ganley cashed the forged check on September 4, 2015. Particularly, during his investigation, Detective Jojola ran an inquiry through MVD records, which verified that the independently obtained driver's license number belonged to an individual named John Ganley. *See* Exhibit A; *see also* Exhibit B at ¶¶ 9-10. From his inquiry, Detective Jojola obtained a photograph of John Ganley which he compared to surveillance video photographs obtained of the transaction at issue. *See* Exhibit B at ¶¶ 11-12. In comparing the photographs, Detective Jojola observed that MVD photograph was a close-up image of the face of a white male with short brown hair, similar to the individual pictured in the surveillance video photographs. *See* Exhibit B at ¶ 12. Detective Jojola also observed that the

MVD photograph depicted a person who appeared to be similar in age to the person pictured in the surveillance video photographs. *See* Exhibit B at ¶ 13. Additionally, Detective Jojola observed that the individual in the surveillance video photographs had tattoos on his arms, but the MVD photograph did not show the arms of John Ganley. *See* Exhibit B at ¶ 14. Based on the identity of the name with the driver's license number obtained by a third-party and the similarities Detective Jojola observed in the photographs, it was reasonable for Detective Jojola to conclude that the individual later identified as Plaintiff John Ganley cashed the forged check on September 4, 2015. Exhibit B at ¶ 15. Accordingly, Detective Jojola did not knowingly or with reckless disregard for the truth include a false statement in the affidavit.

Following the procedure in *Kerns*, even setting aside the alleged false statement in the affidavit does not negate probable cause. Plaintiff alleges physical characteristics, which with hindsight, should have alerted Detective Jojola that Plaintiff was not the individual who cashed the forged check. However, "it simply demands too much to expect police officers, on the basis of slight discrepancies of height . . . and weight . . . to abandon obtention or execution of a warrant on someone who, for other strong indications . . . meets the warrant's description." *See Thompson v. Prince William County*, 753 F.2d 363, 365 (4th Cir. 1984). In *Thompson*, the plaintiff, like Plaintiff John Ganley, was the victim of misidentification and arrested pursuant to a warrant. *See generally, Id.* In that case, an officer obtained the license plate number of a vehicle driven by the suspect. When the officer ran the license plate information through the department of motor vehicles, he discovered that the owner (plaintiff) had the same first name as the suspect. *Id.* at 364. The officer was also told by an informant that the suspect had the same first name. *Id.* Thereafter, two traffic citations issued to the owner of the vehicle provided the physical description included in the warrant application submitted by the officer. *Id.* at 365. The *Thompson* court reasoned that

the identity of first name, confirmation of first name by an informant, and close connection to the vehicle provided, under the totality of the circumstances, probable cause to support application for the warrant even in light of discrepancies regarding the physical characteristics of the suspect compared to the plaintiff. *Id.* Similarly, in this case, the identity of the first and last name used on the forged check with the driver's license number, the confirmation of the name provided by the postal inspector, and the confirmation that the check had been cashed without permission provided Detective Jojola with probable cause, under the totality of the circumstances, to seek to obtain an arrest warrant, despite the alleged discrepancies in physical appearance as alleged by Plaintiff.

> **iii.   Detective Jojola Did Not Omit Material Information from the Criminal Complaint-Arrest Warrant and Probable Cause Would Not be Vitiated.**

There may also be a violation of the Fourth Amendment if an arrest warrant affiant knowingly or recklessly omits from an arrest warrant affidavit, fact(s) which, if included, would have vitiated probable cause. *Stewart*, 915 F.2d at 582-83. "Recklessness may be inferred from omission of facts which are clearly critical to a finding of probable cause." *DeLoach*, 922 F.2d at 622 (internal quotation omitted). Again in *Kerns*, the Tenth Circuit instructed that: "where true information has been allegedly and unlawfully *omitted* from an affidavit…the existence of probable cause is determined 'by examining the affidavit. . . as if the omitted information had been included and inquiring if the affidavit . . . would still have given rise to probable cause." *Kerns*, 663 F.3d at 1188 (quoting *Wolford*, 78 F.3d at 489).

In this case, Plaintiff alleges that Detective Jojola improperly did not include a note by another officer that "[i]t is unknown if they are offenders or victim [sic] of identity theft" in the Affidavit. *See* Doc. 22 at ¶ 11. Importantly, the note by another officer is immaterial to the probable cause determination as such fact would not have vitiated probable cause for issuance of the

Warrant for Arrest in this case. That it was unknown whether the person whose name was forged onto the check at issue was a victim of identity theft does not vitiate the probable cause established by the facts learned by Detective Jojola in the course of his investigation. *See c.f. Hunter v. Bryant,* 502 U.S. 224, 228 (1991) ("[T]he court should ask whether the [government officials] acted reasonable under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact."). Importantly, Detective Jojola, at the time he completed the Criminal Compliant-Arrest Warrant Affidavit, did not have any indication or corroborating evidence that identity theft had occurred. *See* Exhibit B at ¶ 23. Again, the investigation conducted by Defendant Jojola revealed that the driver's license number obtained by the bank teller during the transaction at issue belonged to John Ganley. *See* Exhibit A; *see also* Exhibit B at ¶ 10. Additionally, one witness informed Detective Jojola that the check was stolen then cashed by John Ganley and the victim confirmed that John Ganley did not have permission to cash the check at issue. *See* Exhibit A; *see also* Exhibit B at ¶ 3, 16. Therefore, even if the allegedly omitted information regarding the note by another officer was incorporated into the affidavit as instructed by *Kerns*, the affidavit would still give rise to probable cause and summary judgment is proper.

### iv. Detective Jojola Had Arguable Probable Cause to Submit the Affidavit.

Furthermore, there was arguable probable cause for Detective Jojola to submit the Affidavit at issue. To defeat qualified immunity, Plaintiff must show that Detective Jojola lacked even *arguable* probable cause. *See Stonecipher*, 759 F.3d at 1141. "Arguable probable cause exists so long as an officer's conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012). Thus, even when excluding the alleged statement that Detective Jojola verified the identity of John Ganley based on

photographic comparison, Detective Jojola's conclusion that Plaintiff John Ganley committed the crimes charged was reasonable based the identity of the driver's license number obtained by the bank teller with the MVD record belonging to John Ganley, the name appearing on the forged check. For the same reason, the probable cause conclusion was objectively reasonable despite the statement by another officer that it was unknown whether identity theft had occurred. Thus, Detective Jojola had at least arguable probable cause to submit the Affidavit and is entitled to qualified immunity.

### v. Detective Jojola's Investigation was Constitutionally Sound, Thus He is Entitled to Qualified Immunity.

Count I of Plaintiff's Amended Complaint further alleges that Detective Jojola violated Plaintiff's Fourth Amendment rights and effectuated an unlawful arrest by failing to complete his investigation. *See* Doc. 22 at ¶ 40. Specifically, Plaintiff alleges that Detective Jojola did not attempt to contact Plaintiff to question him about the incident. *See Id*. at ¶ 19. Plaintiff also alleges that Defendant Jojola did not conduct further investigation into the identity of the individual who cashed the check at issue. *See Id.* In evaluating the extent an officer is required to investigate, "the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).

In *Romero*, the defendant officer interviewed two people who implicated the plaintiff in a murder. *See Romero*, 45 F.3d at 1474. Four hours after interviewing the witnesses, the defendant officer arrested the plaintiff without a warrant. *Id.* The plaintiff was subsequently indicted for murder; however, four months later a nolle prosequi was filed in the criminal case. *Id.* The plaintiff then filed suit against the defendant officer, accusing him of arrest without probable cause, false imprisonment, and malicious prosecution in violation of New Mexico law. *Id.* The Tenth Circuit

16

held that the defendant officer was entitled to qualified immunity on all of the plaintiff's claims, finding that the plaintiff failed to show the information supplied by the witnesses was not reasonably trustworthy information sufficient to lead a prudent police officer to conclude that the plaintiff committed the murder. *Id.* at 1478. Specifically, the *Romero* court reasoned that the defendant officer was not required to interview alibi witnesses identified by the plaintiff before effectuating a warrantless arrest. *Id.* at 1476. The Tenth Circuit explained that once the defendant officer concluded that probable cause existed, the failure to question alibi witnesses did not negate probable cause. *Id.* at 1478.

It is well-established that probable cause is determined in terms of the totality of the circumstances confronting the officer at the time of the arrest and the validity of an arrest is not undermined by subsequent events in the suspect's criminal prosecution, such as dismissal of charges. *See Summers v. State of Utah*, 927 F.2d 1165, 1166-67 (10th Cir. 1991) (internal citation omitted). In other words, an officer is not required to investigate for exculpatory evidence before arresting a suspect once probable cause has been established. *See Payne v. Wilder*, No. CIV 16-0312 JB/GJF, 2017 WL 3600454, *32 (D.N.M. August 18, 2017) (internal citation omitted). "[T]he Tenth Circuit also recognized that 'officers are not required to conduct full investigations before making an arrest.'" *Id.* at * 34 (citing *Baptiste v. J.C. Penny Co.*, 147 F.3d at 1257, n. 8). Further, once an officer has established probable cause, an officer is not required to await results of forensic testing to effectuate the arrest, even where the testing exonerates the plaintiff. *See e.g. Braden v. Davis*, No. 15-5046, 645 Fed.Appx. 635 (10th Cir. April 12, 2016) (affirming summary judgment on qualified immunity where plaintiff was arrested without a warrant, held in custody for eighty-four days, then released when DNA evidence exonerated the plaintiff).

In *Wilder v. Turner*, 490 F.3d 810, 811 (10th Cir. 2010), the Tenth Circuit held that the defendant officer was entitled to qualified immunity against the plaintiff's claim of unlawful arrest for driving under the influence. In *Wilder*, the defendant officer stopped the plaintiff's vehicle for speeding and observed an odor of alcohol on the plaintiff's breath, that the plaintiff had pinkish watery eyes and a flushed face, and that plaintiff spoke unusually slow and deliberately. *See Id.* The plaintiff admitted to drinking a glass of wine but refused to complete field sobriety tests. *Id.* The defendant officer arrested the plaintiff who subsequently requested a blood alcohol test. *Id.* The plaintiff received the requested blood test, was charged with criminal violations of state statutes, then released on his own recognizance. *Id.* at 812. A few days later, the blood test revealed that the plaintiff's blood-alcohol content was well below presumed intoxication and all charges against the plaintiff were dismissed. *Id.* The *Wilder* court relied on *Summers* to conclude that the defendant officer was entitled to qualified immunity, despite subsequent dismissal of charges based on the blood alcohol test results. *Id.* at 814.

In this case, Detective Jojola's investigation was constitutionally sound. It is undisputed that Detective Jojola interviewed readily available witnesses, investigated basic evidence, and inquired whether a crime had been committed. *Romero*, 45 F.3d at 1476; *see also* Exhibit A; *see also* Exhibit B. As detailed in the Affidavit, Detective Jojola established probable cause that the person later identified as Plaintiff John Ganley had committed a crime by interviewing the postal inspector; investigating the photographs, check, and MVD record; and inquiring with the victim whether a crime had been committed. *See Id.* Once Detective Jojola demonstrated probable cause, the constitution did not require him to contact Plaintiff to question him about the incident as alleged in the Amended Complaint. *See Payne*, 2017 WL 3600454 at *32. Nonetheless, Detective Jojola attempted to contact the individual later identified as Plaintiff John Ganley regarding the check

cashed on September 4, 2015 but was unable to reach him by telephone. *See* Exhibit B at ¶ 17. Likewise, the Fourth Amendment did not require Detective Jojola to obtain or await forensic analysis of the fingerprint on the check at issue. *See generally, Braden*, 645 Fed.Appx. 635. The fact that it was ultimately determined after the arrest that Plaintiff John Ganley was likely a victim of identity theft and that the criminal charges were dismissed as a result, has no bearing on whether there was probable cause at the time of the arrest. *See Summers*, 927 F.2d at 1166-67. Based on the totality of the circumstances at the time that Detective Jojola sought the arrest warrant, there was probable cause for the arrest, which was corroborated by the issuance of the Warrant for Arrest in this case. *See Messerschmidt*, 132 S.Ct. at 1245. Accordingly, Detective Jojola is entitled to qualified immunity.

**B.   There was No Clearly Established Constitutional Violation of Plaintiff's Rights.**

"The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). More specifically, "[n]ot every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person with attendant inconvenience and humiliation, automatically constitutes a constitutional violation for which a remedy may be sought under 42 U.S.C. § 1983." *Thompson*, 753 F.2d at 364. Qualified immunity shields officers from liability if a reasonable officer could have believed an arrest to be lawful, in light of clearly established law, based on the information within the arresting officer's knowledge at the time. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Even law enforcement officials who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. *Hunter*, 502 U.S. at 227. In order for the law to be clearly established, there must be Supreme Court or Tenth Circuit authority on point, or the clearly established weight of authority

from other jurisdictions must have found the law to be as plaintiff maintains. *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). "Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers, but in light of pre-existing law the unlawfulness must be apparent." *White v. Pauly*, 137 S.Ct. 548, 552 (2017). The law affords immunity for mistaken judgments to "all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229 (internal quotation omitted).

Based upon the state of the law, Detective Jojola would not have been on notice that the Affidavit amounted to a constitutional violation. First, the United States Supreme Court has held that it is presumed that Detective Jojola acted with "objective good-faith" because a neutral magistrate issued a warrant. *See Messerschmidt*, 132 S.Ct. at 1245; *see also* Exhibit F. The Tenth Circuit has held that a probable cause determination made by a neutral magistrate, as was done in this case, is entitled to substantial deference. *See St. John*, 771 F.2d at 447. Therefore, Detective Jojola could not have been on notice that submission of the Affidavit amounted to a constitutional violation on its face.

Next, the law within the Tenth Circuit is that when false statements have allegedly been included in the affidavit, the false information is set aside. *See Kerns*, 663 F.3d at 1188. Similarly, when an officer allegedly omits material information from the affidavit, the material omission is incorporated. *Id.* The Tenth Circuit has instructed that the affidavit, excluding false statements and including material omissions, is then to be evaluated for probable cause. *Id.*; *see also Puller v. Baca*, 781 F.3d 1190, 1197 (10th Cir. 2015). In this case, as previously explained herein, Detective Jojola did not include a false statement in the Affidavit. However, assuming for purposes of argument only that the statement as false, when excluding Detective Jojola's statement that he "was able to obtain a picture of the male identified as John Ganley, and it is verified John Ganley

cashed the check on September 04, in the business name of Viking, Inc. II," Detective Jojola would not have been on notice that identity of the name on the forged check, as confirmed by a witness, with the MVD record would not have established probable cause. Likewise, though Defendants deny that it was a material omission, the inclusion of a note by another officer that "[i]t is unknown if they are offenders or victim [sic] of identity theft" would not have provided Detective Jojola notice that probable cause was vitiated in this case. *See c.f. Hunter v. Bryant,* 502 U.S. 224, 228 (1991) ("[T]he court should ask whether the [government officials] acted reasonable under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact."). Detective Jojola did not commit a clearly established constitutional violation and is entitled to qualified immunity.

Finally, the state of the law would not have provided Detective Jojola notice that his investigation amounted to a constitutional violation. Based on *Romero v. Fay*, to meet constitutional standards, Detective Jojola was required to interview readily available witnesses, investigate basic evidence, and confirm that a crime had been committed. *See* 45 F.3d at 1476. It is undisputed that Detective Jojola met these standards in his investigation in this case: Detective Jojola interviewed a postal inspector who explained a check was stolen then cashed by John Ganley on September 4, 2015; Detective Jojola obtained a copy of the forged check made payable to and signed by John Ganley as well as photographs from the transaction at issue; Detective Jojola compared the driver's license number written down by the bank teller to MVD records belonging to John Ganley; and Detective Jojola confirmed that a crime had been committed. It cannot be said that every reasonable officer in Detective Jojola's position would not have relied upon this type of information to establish probable cause. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("[t]he contours of [a] right [are] sufficiently clear that every reasonable officer would have understood

that what he [was] doing violate[d] that right." (internal quotations omitted)). The Tenth Circuit clearly provides that a law enforcement officer is not required to conduct further investigation once probable cause has been established. *See Payne*, at *32. Consequently, Detective Jojola would not have been on notice that he could commit an alleged constitutional violation by not interviewing Plaintiff after establishing probable cause. Likewise, it is well-established in the Tenth Circuit that an officer is not required to await results of forensic testing of evidence prior to effectuating a constitutional arrest. *See e.g. Wilder* 490 F.3d at 814 ; *Braden*, 645 Fed.Appx. 635. Thus, Detective Jojola did not violate clearly established law.

### C. Immunity has Not Been Waived Under the New Mexico Tort Claims Act for False Arrest, Constitutional Violations, or Failure to Investigate as Pled in Count II of Plaintiff's Amended Complaint.

The New Mexico Tort Claims Act (hereinafter "NMTCA") is the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived and no other claim, civil action, or proceeding for which damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee whose act or omission gave rise to the suit or claim. *See* NMSA 1978, § 41-4-17(A). A plaintiff may not sue a governmental entity or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions granted for governmental entities and public employees in the NMTCA. *See Begay v. State*, 1985-NMCA-117, ¶ 10, 104 N.M. 483, 723 P.2d 252, *rev'd on other grounds by Smialek v. Begay*, 1986-NMSC-049, 104 N.M. 375, 721 P.2d 1306. Therefore, if no specific waiver can be found in the NMTCA, a plaintiff's complaint against the governmental entity or its employees must be dismissed.

In the present controversy, the immunity for Detective Jojola and the City of Albuquerque has not been waived under the NMTCA. Section 41-4-12 of the NMTCA sets forth the specific

torts for which immunity has been waived for law enforcement officers. This section waives immunity for various torts, generally intentional torts, "caused by law enforcement officers while acting within the scope of their duties." *Bober v. New Mexico State Fair*, 1991-NMSC-031, ¶ 32, 111 N.M. 644, 808 P.3d 614. A claim under section 41-4-12 cannot be based on mere negligence. *See Lessen v. City of Albuquerque*, 2008-NMCA-085, ¶ 39, 144 N.M. 314, 187 P.3d 179, *cert. denied* 144 N.M. 331, 187 P.3d 677. Rather, with respect to the torts enumerated in Section 41-4-12, allegations of negligence are appropriate only to the extent that a law enforcement officer's negligence is alleged to have caused a third party to commit an enumerated tort. *See Id.* Therefore, since there is no evidence that an officer's alleged negligence caused a third party to commit a specified tort under Section 41-4-12 and there is no waiver of immunity for simple negligence under this section, any claim of negligence asserted by Plaintiff fails as a matter of law.

Plaintiff's false arrest, constitutional violation, and failure to investigate claims contained in Count II of the Amended Complaint also fail because Detective Jojola's actions were lawful. The tort of false arrest occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so. *See Santillo v. N.M. Dept. of Public Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84, 173 P.3d 6. An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment because probable cause provides the officer with the lawful authority to carry out the arrest. *See State v. Johnson*, 1996-NMSC-075, ¶ 16, 122 N.M. 696, 930 P.2d 1148. "An officer has probable cause to arrest when the facts and circumstances within the officer's knowledge are sufficient to warrant the officer to believe that an offense has been or is being committed." *State v. Granillo-Macias*, 2008-NMCA-021, ¶ 9, 143 N.M. 455, 176 P.3d 1187. As previously explained, Detective Jojola had probable cause to submit the Affidavit.

23

Just like the procedure cited in *Kerns*, 663 F.3d at 1188, New Mexico likewise examines whether false statements or material omissions are of such materiality that their misstatement or non-disclosure may lead to nullification of probable cause. *See State v. Donaldson*, 1983-NMCA-067, ¶ 17, 100 N.M. 111, 666 P.2d 1258.   As previously discussed herein, setting aside the allegedly inaccurate statement and incorporating the allegedly omitted statement does not vitiate probable cause in this case. Particularly, probable cause is still present based on the explanation offered to Detective Jojola by the postal inspector, the identity of name on the forged check and MVD record, investigation of evidence regarding the transaction at issue, and confirmation that a crime had been committed. Consequently, because there was probable cause to arrest and charge Plaintiff with the crime of forgery and violation of the Remote Financial Service Unit Act, Detective Jojola did not falsely arrest Plaintiff as a matter of law and immunity has not been waived under Section 41-4-12 of the NMTCA.

To the extent, if any, Plaintiff's claim for failure to investigate is rooted in the statutory duty embodied in NMSA 1978, § 29-1-1, a governmental entity or its law enforcement officers may be liable for deprivation of a statutory right. *See* NMSA 1978, § 41-4-12. Section 29-1-1 provides that it is the duty of law enforcement officers "to investigate all violations of criminal laws of the state which are called to the attention of any such officer or which he is aware, and it is also declared the duty of every such officer to diligently file a complaint or information, if the circumstances are such to indicate to a reasonably prudent person that such action should be taken . . ." With respect to an alleged deprivation of a statutory right, a plaintiff must demonstrate that an officer's negligent failure to perform a statutory duty resulted in an injury. *See Weinstein v. City of Santa Fe*, 1996-NMSC-021, ¶ 6, 121 N.M. 646, 916 P.2d 1313.

Again as described in the preceding sections of this Motion, Detective Jojola conducted an investigation that was constitutionally appropriate by interviewing available witnesses, investigating basic evidence, and confirming that a crime had occurred. *See Romero*, 45 F.3d at 1476. Furthermore, it is undisputed that upon establishing probable cause that a crime had been committed by John Ganley, Detective Jojola sought to file a criminal complaint. Accordingly, Detective Jojola satisfied both elements of the duty enumerated by Section 29-1-1. Plaintiff's claim for failure to investigate therefore fails as a matter of law and Detective Jojola's immunity has not been waived under Section 41-4-12 for any alleged statutory violation. In sum, there are no genuine issues of material fact precluding summary judgment on Count II of Plaintiff's Amended Complaint for false arrest, constitutional violation, and failure to investigate claims against Detective Jojola.

**VI.      CONCULSION**

**WHEREFORE,** for the foregoing reasons, Defendant Eric Jojola respectfully request that this Court grant Detective Eric Jojola qualified immunity and dismiss Count I of Plaintiff's Amended Complaint with prejudice and dismiss Count II of Plaintiff's Amended Complaint against Detective Jojola with prejudice and for such other relief as the Court deems just and proper.

Respectfully submitted,

CITY OF ALBUQUERQUE

*/s/ Jessica L. Nixon*
Jessica L. Nixon
Assistant City Attorney
P.O. Box 2248
Albuquerque, New Mexico  87103
(505) 768-4500
*Attorney for Defendants Eric Jojola and City of Albuquerque*

It is hereby certified that on this the 21st day of
December, 2017 a true and correct copy
of the foregoing was sent via Notice of Electronic
Filing to:

Law Office of Nicole W. Moss, L.L.C
Nicole W. Moss
201 12th St. NW
Albuquerque, NM 87102
(505) 244-0950

Law Offices of Marshall J. Ray, LLC
Marshall J. Ray
201 12th St. NW
Albuquerque, NM 87102
(505) 312-7958
*Attorneys for Plaintiff*

*/s/ Jessica L. Nixon*
Assistant City Attorney